# COLLECTIVE BARGAINING AGREEMENT

BETWEEN

FIRST STUDENT, INC.

WARWICK, RHODE ISLAND (including Jamestown)

AND

AMALGAMATED TRANSIT UNION, DIVISION 618

PROVIDENCE, RHODE ISLAND

**Effective Dates:**

**July 1, 2004 to June 30, 2008**

EXHIBIT

A

## AGREEMENT CLAUSE

This Agreement made and entered into this ____ day of __________, 2004 between FIRST STUDENT, INC. (hereinafter referred to as the "Company") and AMALGAMATED TRANSIT UNION, LOCAL UNION NO. 618 (hereinafter referred to as the "Union").

## WITNESS CLAUSE

WHEREAS, this Agreement is entered into for the purposes of providing for mutual understanding between the parties with respect to wages, hours, and working conditions of employees in the Company, and

WHEREAS, the National Labor Relations Board has certified the Union as the sole and exclusive bargaining agent for all drivers of the Company hereinafter described.

NOW THEREFORE, in consideration of the mutual promises, covenants, and agreements contained therein, the Company and the Union agree as follows:

## Article 1
## INTENT AND PURPOSE

It is the intent and purpose of this Agreement to set forth the mutual agreement of the parties as to wages, hours, and other conditions of employment, and to this end all matters relative thereto are specifically agreed to herein, and when duly signed by the authorized representatives of the Company and the Union shall be conclusive, and any dispute arising between the parties shall be limited to the terms of this Agreement.

Whenever the term "he" is used throughout this Agreement, it shall be construed and interpreted as pertaining to either gender, male or female.

## Article 2
## MANAGEMENT RIGHTS

The Union recognizes the right and responsibility of the Company to manage its facility and to direct its working forces. All rights of the Company which have not been specifically abridged or modified by this Agreement are retained by the Company including, but not limited to, the right to make and modify reasonable work rules and regulations. The Company agrees to notify the Union by registered mail prior to the implementation of changes in rules and regulations.

## Article 3
## UNION RECOGNITION

The Company recognizes the union as the sole and exclusive representative of all its drivers assigned to the Warwick and Jamestown, Rhode Island locations, for the purpose of collective

bargaining with respect to rates or pay, wages, hours of employment and other conditions of employment and agrees to deal with the union as hereinafter provided.

**Article 4**
**UNION SECURITY AND CHECK-OFF**

All employees covered by this Agreement shall become and remain members of the union or pay agency fees by paying all dues, assessments and initiation fees required by September 30, 2001 or within forty-five (45) calendar days after becoming employees of the Company, as a condition of continued employment.

The union agrees that all employees will be accepted into membership on the same terms and conditions applicable to other members and further, that the Company will not be requested to remove from service an employee for reasons other than such employee's failure to tender the periodic dues and assessments, initiation fees or agency fees required as a condition of acquiring or retaining membership in the union.

The employer agrees to deduct weekly from the wages of each employee who is a member of the union and authorizes the Company to make such a deduction such dues, assessments, initiation fees or agency fees as required by the union. The Company agrees to transmit such sums collected by the Company to the Secretary-Treasurer of the union by the fifteenth (15th) day of the month. The Company shall furnish the union with a written record of the sums and names of employees from whom deductions were taken at the time of transmitting such sums to the union.

**Article 5**
**UNION REPRESENTATIVES**

The Company agrees to recognize representatives elected or appointed by the union. The union shall notify the Company, in writing, of the name(s) of each representative as soon as they are elected or appointed.

Should it be necessary for a representative(s) of the union to attend any meeting or activity scheduled by the Company during the representative(s)' scheduled working hours, the representative(s) shall be made whole for all wages that they lose.

Union representative(s) will be allowed to attend ATU seminars, for the purposes of training, which will not be counted as absenteeism. Union representatives will be allowed to attend the ATU convention. No more than two (2) representatives will be allowed the same time period off, unless approved by the Company. Union representatives wishing time off from work for union activities shall give the Employer at least one (1) week notice by facsimile.

**Article 6**
**UNION BULLETIN BOARD**

The Company shall provide a bulletin board in the driver's area for the union's use. All

material posted shall be limited to the official business of the union.

**Article 7**
**SENIORITY**

Seniority for employees governed by this Agreement shall be defined as the period of continuous employment with the Company in the work covered by this Agreement. It shall be deemed to include any seniority presently held by an employee through agreement between the Company and the Union prior to this Agreement. There shall be separate seniority lists for Jamestown and Warwick.

A) Seniority will commence when an employee acquires his/her white card.

B) Seniority for all employees shall be recorded on lists certified by the Union and on file with First Student. Seniority order shall be under the jurisdiction of the Union. All questions pertaining to seniority order shall be settled by the Union.

An employee shall lose all seniority rights for the following reasons:

1) If he/she voluntarily leaves the Company's employ;

2) If he/she is discharged for just cause;

3) If he/she is absent from work for three (3) consecutive working days, without notification to the Company; except where absence is due to long illness or injury.

4) If he/she fails to return to work within seven (7) days after receipt of a registered or certified letter mailed to his/her last known address, as shown on the Company records;

5) If the Superintendent of Schools or his/her designee insists upon dismissal of a company employee in writing stating with particularity the reasons therefore. The Company agrees to furnish a copy of the Superintendent's written reasons to the Union;

6) Loss of school bus, or motor vehicle driving privileges (if found not guilty, the employee is reinstated with full seniority.)

A list of employees arranged in the order of their seniority shall be posted monthly in a conspicuous place at their place of employment and a copy shall be sent to the Union each month showing the names, addresses, dates of hire and rates of pay.

The Company will provide a list of new employees with their addresses and rates of pay to the union once per week.

Employees may bid, by seniority and without loss of seniority, from one location to the other on a permanent vacancy.

**Article 8**
**PROBATION**

All new employees shall be hired on a forty-five (45) calendar day trial basis and shall work under the provisions of this Agreement within which time they may be dismissed without recourse to the arbitration provision herein. After the forty-five (45) calendar day trial period, they shall be placed on the seniority list as regular employees in accordance with their date of hire.

All employees hired after the effective date of this Agreement shall be required to obtain their Rhode Island "white card" within six (6) months of hire or they shall be dismissed without recourse to the arbitration provision herein.

**Article 9**
**LAYOFFS**

Layoffs will be determined by combined seniority, i.e. the employee with the least seniority shall be laid off first. Recall of laid off employees shall be in reverse order of layoff.

Employees who are recalled shall be sent a notice by certified mail to their last known address.

Employees must return to work within seven (7) business days receipt of notice.

Employees shall have recall rights for three (3) years.

Laid-off employees, when recalled, shall receive the current rate of pay for the classification in which they hold seniority, provided they are reemployed in the same classification.

**Article 10**
**HOURS OF WORK**

The Company and/or the School District shall establish routes, charters, and time periods and the division of work may be varied from time to time as demand may require. Employees who work in excess of forty (40) hours in any one (1) week shall be paid at the rate of one and one-half times (1-1/2) the regular hourly rate.

**Article 11**
**SELECTION OF WORK**

Employees shall select work according to seniority from the following categories of work:

1. A.M. and P.M. and attached kindergarten and/or attached late run and/or skills run.
2. Kindergarten runs not attached to other runs.
3. Late runs and/or skills runs which will be selected by route drivers, by seniority by area, which are not attached to other runs.
4. An employee may not select more than forty (40) hours per week under section 1, 2, and 3.
5. Employees will be allowed to select only one (1) kindergarten and one (1) late run.
6. Daily work distribution among the spare drivers will be governed by seniority in accordance with the restrictions set forth in number 4, above.

**Article 12**
**EXTRA WORK**

Extra work and charters will be given out by rotating seniority. Employees who desire extra work shall place their name on the daily extra work list if they desire to work. To be eligible to select extra work, the extra work must not conflict with the employee's regular assignment(s) and must not put the employee over forty (40) hours for the week unless requested and approved in advance by management.

There shall be two (2) lists: a daily (and weekend) extra work list and a charter list. The extra work and charter selection process may be modified as the need arises at the mutual agreement of the Company and the union.

Employees who are bypassed or their selected work is cancelled for any reason will be given the next opportunity to pick for comparable work.

If a Saturday, Sunday or holiday charter or extra work assignment is cancelled and the employee is not notified of the cancellation and reports to work, the employee will be paid for two (2) hours at his/her normal hourly rate of pay, and employees whose selected work is cancelled for any reason will be given the next opportunity to pick for comparable work.

**Article 13**
**SUMMER WORK**

The Company assigns summer work in the following manner. Employees are asked to volunteer for summer work and these employees are assigned work as needed. The Company then

determines the amount of additional summer work. Non-volunteering employees shall bid by seniority the week(s) during the summer in which the employee shall be ready and available to work. If additional work is still available, the Company shall assign this work to employees in the inverse order of seniority.

## Article 14
## DISCIPLINE

The Company shall administer discipline within thirty (30) days after having knowledge of the infraction that lead to the discipline. Discipline may be administered after the thirty (30) day period if the Company gives the union president/business agent written notice with reasons why the investigation of the matter will exceed thirty (30) days.

## Article 15
## GRIEVANCE PROCEDURE

If any disagreement arises over the application or the interpretation of this Agreement, the employees, the union and the Company agree that the procedure outlined below shall be the exclusive remedy for such disputes.

Step 1. The Grievance shall be reduced to writing within five (5) working days after the employee or the union has knowledge of the incident giving rise to the grievance. The Grievance shall be presented to the location contract manager by the union, and the location contract manager shall respond in writing within five (5) working days to the union.

Step 2. If the Grievance is not resolved at Step 1, the union may, within ten (10) working days, submit the Grievance in writing to the Regional Vice President at which time a meeting between the Regional Vice President or his designee and the union will be set by mutual agreement. The Regional Vice President or his designee will respond in writing to the union within ten (10) working days after the meeting.

Step 3. (a). If the Union is dissatisfied with the response of the Regional Vice President or his designee, the Union may, within thirty (30) working days, notify in writing the Regional Vice President of its intent to submit the Grievance to arbitration.

(b). Upon notice to arbitrate, the Company and the union shall submit the dispute to an arbitrator, either mutually agreed to or from a list of five (5) provided by the American Arbitration Association. The Company and the union will each strike two (2) names from the list provided by the A.A.A. and the remaining name will be the arbitrator.

(c). The decision of the arbitrator shall be final and binding on both parties and any award made shall be put into effect immediately. Should back pay be awarded, the back pay shall be paid within thirty (30) days.

The fees and expenses of the impartial arbitrator shall be paid one-half by the Company and

one-half by the Union, but all other expenses in connection with the presentation of a matter to the arbitrator shall be borne by the party incurring them.

The power of the arbitrator shall be limited to the interpretation of the Agreement. He shall have no power to add or subtract from or modify any of this Agreement, nor shall he have power to establish or change any wage scale or classification.

These time limits may be waived by mutual agreement between the Union President and/or Business Agent and the Contract Manager and such waiver shall not be unreasonably withheld.

No grievance shall be presented hereunder which occurred prior to the effective date of this Agreement.

Time limits set in this Article shall not include Saturdays, Sundays or holidays.

Nothing herein shall preclude the earlier settlement of any grievance directly by agreement between the representatives of the Company and the Union which does not conflict with this Agreement.

## Article 16
## ACCIDENT REVIEW BOARD PROCEDURE

There shall be two (2) union employees (who shall be First Student Warwick/Jamestown location employees only) and two (2) management personnel that shall comprise the Accident Review Board. All accidents shall be reviewed by the Board. The following guidelines will control the Accident Review Board (ARB):

1. Drivers eligible to serve on the ARB must be employed at First Student (RSTS) for a minimum of two (2) years and be preventable accident-free for two (2) years.

2. Within thirty (30) days of a request, the Company will provide the Union Business Agent with a list of drivers who are eligible to serve on the ARB.

3. The Union Business Agent or his designee will select a minimum of ten (10) drivers who will attend an information session to discuss guidelines and procedures of accident review. Employees attending the information session will be paid for the actual time spent in the meeting at their regular rate of pay. Those who complete the session will be part of the ARB at the Business Agent's discretion.

4. The Business Agent and Location Manager will handle any discrepancies regarding the list of eligible drivers only.

5. Any drivers who serve on the ARB will receive actual time spent or a minimum of three (3) hours pay at the non-revenue rate regardless of the number of accidents involved.

6. Accident reviews will be held each month with timely notification to the union. Any driver on the ARB who is not present will be replaced by another driver from the eligibility list.

7. The Location Manager and the Business Agent will discuss any accident returned with a 50/50 decision. If no agreement can be reached or in the event of an impasse, the matter shall be resolved by the Region Vice President and the Business Agent or their authorized designees, or a mutually agreed mediator.

## Article 17
## WAGE RATES

Effective Dates

**Drivers (Warwick & Jamestown)**

| | current | 10/17/04 | 7/1/05 | 7/1/06 | 7/1/07 |
|---|---|---|---|---|---|
| Step 6 (Top) | $13.40 | $14.00 | $14.45 | $15.00 | $15.40 |
| Step 5 | $12.40 | $12.40 | $12.40 | $12.40 | $12.40 |
| Step 4 | $10.50 | $10.50 | $10.60 | $10.70 | $11.00 |
| Step 3 | $10.20 | $10.30 | $10.40 | $10.60 | $10.80 |
| Step 2 | $10.10 | $10.20 | $10.20 | $10.30 | $10.40 |
| Step 1 (new hire) | $10.00 | $10.00 | $10.10 | $10.10 | $10.20 |

*Explanatory Note: Each July 1st, a driver progresses to the next higher step in the progression.

## WAGE RATES (continued)

**All Drivers**

| | current | 7/1/04 | 7/1/05 | 7/1/06 | 7/1/07 |
|---|---|---|---|---|---|
| Non-revenue work | $8.90 | $9.00 | $9.00 | $9.10 | $9.20 |
| Outside Charter | driving rate | ------------------------------------→ | | | |
| School Charter | driving rate | ------------------------------------→ | | | |
| Mandatory Safety Meeting | driving rate | ------------------------------------→ | | | |

**Article 18**
**PAY DAY**

Employees shall be paid on a weekly basis.

**Article 19**
**MINIMUM GUARANTEES**

Drivers shall receive a two (2) hour minimum pay guarantee for a.m. runs and p.m. runs, and one (1) hour for Kindergarten runs.

**Article 20**
**PAID HOLIDAY**

Employees shall be a paid their regular route pay for Memorial Day.

Effective July 1, 2006, employees shall be a paid their regular route pay for Thanksgiving Day.

Effective July 1, 2007, employees shall be a paid their regular route pay for the day after Thanksgiving Day.

In order to receive holiday pay, an employee must work all his scheduled hours the work day before and the work day following the holiday.

**Article 21**
**PHYSICAL EXAMINATION**

The Company shall provide, at no cost to the employee, the physical examinations as required by federal or state authorities to performed by a physician selected by the Company. The employee shall be paid for two (2) hour, at the non-revenue rate of pay, for time spent in the physical examination performed by a physician selected by the Company.

**Article 22**
**DRUG TESTING**

The Company shall pay an employee required to have a drug and/or alcohol test one (1) hour's pay at the employee's regular rate of pay, but only if the employee tests negative.

An employee shall only be required to submit to a drug and/or alcohol test on a day during which they are scheduled or assigned to perform work.

**Article 23**
**JURY DUTY**

An employee who serves as a juror shall be paid the difference between their regular rate of pay and their jury duty fee for all days of jury duty.

**Article 24**
**COURT APPEARANCE**

When an employee is required in any court for purpose of testifying, because of any accident the employee may have been involved in or for purposes of testifying in support of the Company for any incident which arose out of the course of employment, such employee shall be reimbursed in full for lost time.

**Article 25**
**SNOW DAYS**

Should school be cancelled less than one (1) hour before an employee's scheduled report time and the employee reports to work, the employee will be paid one (1) hour's pay.

**Article 26**
**MILITARY SERVICE**

Employees enlisting or entering the military or naval services of the United States, or serving in the military reserves or national guard, shall be granted the rights provided by applicable Federal and State Law.

**Article 27**
**BEREAVEMENT LEAVE**

Employees shall be granted up to three (3) days unpaid leave to attend the funeral in the event of the death of the following relatives: spouse, son, daughter, brother, sister, mother, father, step-parents, step-children, grandparent or grandchild.

Employees may be granted unpaid leave to attend the funeral in the event of the death of other relatives if reasonable notice is given and the Company is capable of covering the employee's work for the day(s) requested off.

The Company reserves the right to require proof of death and relative status.

An employee will receive six (6) hours pay at the non-revenue rate to attend the funeral of the following relatives: spouse, child, parent, grandparent or sibling.

**Article 28**
**LEAVES OF ABSENCE**

Any employee desiring a leave of absence from his employment shall secure written permission from both the Local Union and the Company. The maximum leave of absence shall be for thirty (30) days and may be extended for like periods. Permission for extension must be secured from both the Local Union and the Company.

Failure to comply with this provision shall result in the complete loss of seniority rights for the employee involved. This Section is not intended to supersede any applicable rights available under the rules and regulations of the Federal Family Medical Leave Act and state law.

Military leaves of absence will be granted as the need arises and the employee will retain their seniority while on military leave.

**Article 29**
**401K PLAN**

Employees shall be able to participate in the Company's 401k in accordance with the eligibility conditions and restrictions of the plan.

**Article 30**
**GROUP INSURANCE**

The Company will provide a group medical insurance plan for all employees who work an average of 20 hours per week for the school year. Employees may elect, at their own cost, to participate in the additional levels of coverage offered by the insurance company.

The Company shall continue to contribute at least fifty percent (50%) toward the cost of the monthly premiums for the Employee-only medical plan.

The difference between the Company contribution and the monthly premium charges by the insurance company shall be paid by employee electing coverage.

The employee contribution toward this coverage shall be done on a nine (9) month basis.

**Article 31**
**LIFE INSURANCE**

The Company shall maintain a life insurance policy for each employee in the amount of $5,000 at no cost to the employee.

**Article 32**
**NO STRIKE-NO LOCKOUT**

It is agreed that during the term of this Agreement neither the Union nor its officers or

members shall instigate, call, sanction, condone, or participate in any strike, sit-down, stay-in, walkout, slow-down, stoppage, or curtailment of work, and provided further that there shall be no lockout of employees by the Employer.

Any employee or employees found guilty of participating in such actions shall be subject to immediate discharge.

In the event that any of the employees violates the provisions of the above paragraph, the Union shall immediately take action and use every means at its disposal to prevent the conduct and continuance of such action.

## Article 33
## FAIR EMPLOYMENT PRACTICES AND EQUAL OPPORTUNITIES

The Company and the Union will comply with all Federal and State Laws prohibiting discrimination in employment because of race, color, religion, national origin, age, sex, or non-job related handicap or disability.

The Company and the Union agree that there will be no discrimination by the Company or the Union against any employee because of his/her membership in the Union or because of any employee's lawful activity and/or support of the Union.

## Article 34
## ACCIDENT REPORTS

Employees will be paid actual time, at their driving rate, when required by the Company to obtain the official accident reports from the appropriate authorities.

Employees will paid actual time, at their driving rate, while completing accident and/or incident reports.

## Article 35
## PERSONNEL FILES

The Employer shall, within three (3) working days after receipt of a written request from an employee, permit the employee to inspect their personnel file, at their work location.

Unauthorized employees shall not have access to other employees' personnel files.

The Employer shall, within three (3) working days after a written request from an employee, provide the employee with a copy, at a reasonable cost, of all or part of their personal file, provided the request identifies the material to be copied.

**Article 36**
**UNIFORMS**

All drivers shall report to duty in a neat and presentable manner. Should the Employer require the employees to wear a uniform, the Employer shall pay the full cost of the uniform.

**Article 37**
**SEPARABILITY**

If any provisions of this Agreement shall be held invalid or in conflict with any Federal or State Law, the remainder of the Agreement shall not be affected thereby.

**Article 38**
**COMPLETE AGREEMENT**

This Agreement contains the complete understanding between the parties and no additions, waivers, deletions, changes, or amendments shall be made during the life of this Agreement except by mutual written consent of the parties hereto.

**Article 39**
**SUCCESSOR CLAUSE**

This Agreement shall be binding upon the parties hereto, and shall be binding upon any successors or assigns by merger, sales, leases, transfer or consolidation and shall be subject to any terms and conditions of this Agreement for the life thereof.

**Article 40**
**DURATION OF AGREEMENT**

This Agreement shall become effective on July 1, 2004 and extend for four (4) years until June 30, 2008, and from year to year thereafter, unless changed by the parties.

Either of the parties to this Agreement desiring a change in any Article or Articles of this Agreement shall notify the other party in writing of the desired changes at least sixty (60) days prior to the expiration. If neither party gives such notice, the Agreement shall continue on from year to year. If such notice is given by either party, the Agreement shall then be opened for consideration of the change or changes desired.

| FIRST STUDENT, INC. | A.T.U., Division 618 |
| --- | --- |
| James Castelli | Stephen Farrell |
| Senior Region Vice President | President/Business Agent |
| Date: 10/27/04 | Date: 11/15/04 |